IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                             Criminal No. ELH-18-167

STEVEN COLE,
*Defendant*.

**MEMORANDUM OPINION**

Defendant Steven Cole, who is serving a sentence of 108 months of imprisonment, has renewed his motion for compassionate release, pursuant to 18 U.S.C. §§ 3582(c)(1)(A)(i) and (c)(2).

Cole was indicted in March 2018 (ECF 1) and charged with three crimes: possession with intent to distribute oxycodone, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c) and 18 U.S.C. § 2 (Count Two); and possession of a firearm and ammunition by a felon, in violation of 21 U.S.C. § 922(g)(1) and 18 U.S.C. § 2 (Count Three).

Pursuant to a Plea Agreement (ECF 27), Cole entered a plea of guilty on December 11, 2018, to Counts One and Two of the Indictment. ECF 25. The government agreed to recommend a reasonable sentence. ECF 27, ¶ 10. At sentencing on April 22, 2019 (ECF 29; ECF 66-6 (Transcript)), the Court sentenced Cole to 48 months of imprisonment as to Count One and 60 months of imprisonment as to Count Two, consecutive, for a total term of incarceration of 108 months, with credit from December 6, 2017. ECF 41 (Judgment). The sentence for Count Two corresponded to the congressionally mandated minimum sentence.

In May 2020, Cole, proceeding pro se, filed a motion titled "Pursuing Compassionate Release Relief Under 18 U.S.C. 3582(c)(1)(A)(i)." ECF 61. The Office of the Federal Public

Defender ("FPD") subsequently entered an appearance for Cole (ECF 64) and then filed a supplemental memorandum in support of Cole's motion.  ECF 66.  I shall refer to ECF 61 and ECF 66 collectively as the "First Motion."  The First Motion was supported by several exhibits. ECF 66-1 to ECF 66-9.  The government opposed the First Motion (ECF 73) and also submitted several exhibits.  ECF 73-1 to ECF 73-7.  Cole filed a reply.  ECF 77.

The government subsequently sought permission to file a surreply (ECF 80), to which the defense asserted limited objections.  ECF 82.  The Court granted leave to the government to file a surreply, limited to new authority, "legal and/or scientific."  ECF 83; *see also* ECF 81.  The Surreply is docketed at ECF 87.

The Court also received correspondence in support of the defendant.  ECF 90–ECF 94.  In addition, the government submitted correspondence on July 30, 2020, relating to guidance from the Department of Justice concerning the condition of obesity.  ECF 95.

By Memorandum Opinion and Order of August 7, 2020 (ECF 96, ECF 97), I denied the First Motion, without prejudice.  Although I concluded that defendant's medical conditions satisfied the "extraordinary and compelling prong" of 18 U.S.C. § 3582, I also determined that the factors under 18 U.S.C. § 3553 did not weigh in favor of granting the First Motion.

The Court has since been inundated with many letters and motions from the defendant. *See*, *e.g.*, ECF 100, ECF 117, ECF 118, ECF 119, ECF 120, ECF 122, ECF 123, ECF 132, ECF 140, ECF 143, ECF 151, ECF 152, ECF 154, ECF 159, ECF 161, ECF 162, ECF 163, ECF 167, ECF 168, ECF 169, ECF 170.[1]

---

[1] Defendant also filed a post-conviction petition under 28 U.S.C. § 2255.  *See* ECF 142.  It was denied by Memorandum and Order docketed on December 4, 2023.  *See* ECF 149, ECF 150.

2

This Memorandum Opinion addresses several motions filed by defendant, who is now pro se.  They are as follows:  1) Defendant's "Motion For Reconsideration To Reduce Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A)(i)," filed March 10, 2021 (ECF 103) (the "Motion for Reconsideration"); 2) Cole filed a second motion for compassionate release on June 28, 2023 (ECF 140), which he supplemented on August 25, 2023 (ECF 143) (collectively, the "Second Motion" or the "Second Compassionate Release Motion"); 3) On January 25, 2024, defendant filed a "Motion for Converting Over to Home Confinement."   ECF 158 (the "Motion for Home Confinement").[2]

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion for Home Confinement (ECF 158), because the Bureau of Prisons, rather than the Court, is clothed with the authority to determine defendant's eligibility for home confinement.  I shall grant the Second Motion for Compassionate Release (ECF 140, ECF 143), in part, and reduce the defendant's total sentence to 96 months of imprisonment, with credit dating from December 6, 2017.  And, I shall deny the Motion for Reconsideration (ECF 103), because it is, in effect, a successive motion for compassionate release, for which defendant did not exhaust remedies.  Alternatively, ECF 103 is moot, in light of my disposition of the Second Motion.

## I.    Background

---

[2]  Other motions are pending.  On November 27, 2023, defendant filed a motion seeking to reduce his sentence under 18 U.S.C. § 3582I(2), based on the retroactive application of Amendment 821.  ECF 146.  On June 11, 2024, I directed the government to respond to ECF 146, due by August 21, 2024.  ECF 166.  And, on July 3, 2024, defendant filed an "emergency pro-se motion to receive the proper Good time/Good conduct credits, F.T.C. credits under the F.S.A. (First Step Act) and also . . . under the Second Chance Act (S.C.A.)."  ECF 169.  On July 25, 2024, I directed the government to respond to ECF 169, due by August 26, 2024.  ECF 171.

Defendant's persistent barrage of motions and correspondence is concerning to the Court. In any event, this Memorandum Opinion does not address ECF 146 or ECF 169.

On March 27, 2018, a federal grand jury returned an Indictment (ECF 1) charging defendant with Possession with Intent to Distribute Oxycodone, in violation of 21 U.S.C. § 841(a)(1) (Count One); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g) (Count Three).  Defendant entered a plea of guilty on December 11, 2018 (ECF 25) to Count One and Count Two of the Indictment, pursuant to a Plea Agreement. ECF 27 (Plea Agreement); ECF 137-1 (Rule 11 Hearing Transcript).

Count One carried a maximum term of imprisonment of 20 years.  ECF 27, ¶ 3.  For Count Two, the minimum term of imprisonment is five years, with a maximum of life, and the sentence for Count Two must run consecutive to the sentence for Count One.  *Id.*; ECF 30 (Presentence Report or "PSR"), ¶¶ 75, 76.

The Plea Agreement contains a "Stipulation of Facts."  ECF 27 at 10–11.  During the proceeding conducted by the Court under Fed. R. Crim. P. 11, the government orally presented the facts in support of the guilty plea, largely consistent with the content of ECF 27 at 10–11, as follows, ECF 137-1 at 31–33:

> The Defendant, Steven Cole, age 31, is a resident of Baltimore, Maryland. On December 5, 2017, Cole was selling opioid narcotics in the area of 2400 Winchester Street in Baltimore, less than a block away from the James Mosher Elementary School and across the street from a baseball field adjacent to the school. On his person, Cole carried a revolver-style handgun.
>
> That same day, while driving in the area of the 2400 block of Winchester Street, Baltimore City Police officers observed Cole approach the passenger-side of a gold color vehicle and open its door. Officers then saw Cole attempt to hand the driver of the vehicle small items that they understood to be narcotics. As the officers drove by, Cole—who was wearing glasses, a grey sweatshirt, and a black puffy jacket—stood straight up and looked in the direction of the officers' vehicle.
>
> The officers then stopped their vehicle and began conducting a U-turn, understanding that they had just interrupted a drug sale.

4

In response, Cole fled and ran into the stairwell inside the apartment complex located at 2400 Winchester Street. The officers gave chase. One officer proceeded up the complex's north stairwell; the other proceeded up its south stairwell.

The officer proceeding up the south stairwell located Cole's glasses in the stairwell. The officer proceeding up the north stairwell located Cole on the third floor of the apartment complex just a few feet away from the same black puffy jacket that he was previously wearing. Cole had placed it on the ground next to a bag of garbage. The officers then arrested Cole.

At the time Cole was located on [the] third floor of the complex, no one else was present except the arresting officers and Cole. Further, the arrest and search of Cole was captured by the officers' body-worn cameras.

Cole's black puffy jacket, which Cole falsely told officers was not his, was secured by the officers. It was clean and warm to the touch, and contained within it was a black fanny pack that contained a Fie Titanic .32 caliber revolver bearing serial number B23744 and five rounds of ammunition. Prior to its recovery by the police officers, Cole possessed the pistol. Furthermore, Cole possessed this firearm in connection with his illegal business selling opioid narcotics. Cole is prohibited from possessing firearms, having sustained several previous felony convictions, including two past convictions for possession with intent to distribute controlled dangerous substances.

During the search of Cole incident to his arrest, officers also recovered a number of pills—2.99 grams' worth total—which ultimately tested positive for oxycodone. Cole possessed these opioid narcotics for the purpose of selling them to customers. The officers likewise recovered $443.00 from Defendant, which were proceeds from his sale of drugs.

Cole is a social media user, and on March 5, 2018, law enforcement obtained a federal search and seizure warrant for Cole's Facebook and Instagram accounts. Law enforcement reviewed the returns from the warrant and discovered, among other things, (1) several pictures of Cole wearing the same black puffy jacket that he had previously abandoned on the third floor of 2400 Winchester Street and that ultimately contained the fanny pack with the gun in it; (2) pictures of Cole handling what appeared to be large amounts of cash; (3) a picture of OxyContin pills; (4) two pictures of handguns; (5) and various gang-related postings, including posts that stated, respectively, "My religion is Crippin" and "WARNING! CRIPS DO IT BETTER."

The Presentence Report (ECF 30) determined that Cole qualified as a career offender under

§ 4B1.1 of the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *Id.* ¶ 27. This finding

was based on two prior and distinct felony drug offenses.  *See id.* ¶¶ 35, 37.  After deductions for acceptance of responsibility under U.S.S.G. § 3E1.1, defendant had a final offense level of 29.  *Id.* ¶ 30.[3]  And, he had a Criminal History category of VI, because of his career offender status.  *Id.* ¶ 41; U.S.S.G. § 4B1.1(b).[4]

The Guidelines for Count One called for a period of incarceration ranging from 151 months to 188 months. ECF 30, ¶ 77. With the mandatory minimum sentence of 60 months for Count Two, the total Guidelines ranged from 211 months to 248 months of incarceration.  *Id.* ¶ 78.  But, because defendant was deemed a career offender who was convicted of an offense under 18 U.S.C. § 924(c), the Guidelines were increased to 262 months to 327 months of imprisonment.  *Id.*; *see* U.S.S.G. § 4B1.1(c)(3); § 5G1.2(e); and § 2K2.4(b).

At sentencing on April 22, 2019, the Court determined that the Maryland offense of possession with intent to distribute is a qualifying career offender predicate, and that defendant qualified as a career offender.  ECF 44 (Sentencing Transcript) at 22; *see also id.* at 15–22.[5]  And, the Court agreed with the Guidelines sentencing range of 262 to 327 months of imprisonment.  *Id.* at 22.

---

[3] For Count One, if defendant were not a career offender, he would have had a final offense level of 13.  *See* ECF 30, ¶¶ 25, 28, 29.  Count Two requires a consecutive sentence of at least five years' imprisonment, with a maximum of life.  And, the Guideline sentence for Count Two would have been the mandatory minimum term of imprisonment, *i.e.*, five years, consecutive.  U.S.S.G. § 2K2.4(b).

[4] To the Court's knowledge, defendant would still qualify as a career offender if he were sentenced today.  But, if defendant were not a career offender, he would have had a Criminal History Category of V, based on a score of ten points.  ECF 30, ¶¶ 38-40.  Under the Guidelines currently in effect, however, defendant would have had a score of nine points, which equates to a Criminal History Category of IV.

[5] Defendant's prior record is discussed in more detail, *infra*.

The government asked the Court to impose a sentence of 120 months of imprisonment. ECF 31 at 1; ECF 44 at 28.  Defendant sought a sentence of 96 months of imprisonment.  ECF 44 at 32–33.

As noted, the Court imposed a total sentence of 108 months of imprisonment, *i.e.*, nine years.  In particular, the Court sentenced defendant to 48 months as to Count One and 60 months, consecutive, as to Count Two.  *Id.* at 46.  Defendant received credit from December 6, 2017.  *Id.*

Judgment was entered on April 23, 2019.  ECF 41.  Defendant did not note an appeal to the Fourth Circuit.

On May 18, 2020, defendant filed a motion for compassionate release.  ECF 61.  Through counsel, he filed a supplement to the motion.  ECF 66.  Briefing followed.  ECF 73, ECF 77, ECF 87.  And, by Memorandum and Order of August 7, 2020 (ECF 96, ECF 97), I denied Cole's First Motion, without prejudice.

Thereafter, on March 10, 2021, defendant filed the Motion for Reconsideration.  ECF 103. The government filed an opposition.  ECF 110.  And, by letters of October 16, 2021 (ECF 117) and June 9, 2022 (ECF 122), Cole replied.

Defendant filed his Second Compassionate Release Motion on June 28, 2023 (ECF 140), which he supplemented on August 25, 2023.  ECF 143.  The government opposes the motion. ECF 160.  Cole replied.  ECF 161.

In his Motion for Home Confinement (ECF 158), filed on January 25, 2024, Cole seeks to "convert the remain[der] of [his] projected release date time to serve on home confinement."  *Id.* at 1.  The government did not respond.

Cole is currently incarcerated at Allenwood Medium FCI.  *Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/# (search by BOP Register Number 63952-037) (last

accessed July 16, 2024). He has served approximately six years and seven months (79 months), or 73% of his sentence, exclusive of good time credit. *See* ECF 168-1 at 6. Including good time credit, defendant has served over 82% of his sentence. *Id.* According to the Inmate Locator, defendant has a projected release date of October 27, 2025. *See* https://www.bop.gov/inmateloc/#; *see also* ECF 168-1 at 6.

## II.      Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Davis*, 99 F.4th 647, 653 (4th Cir. Apr. 18, 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th

Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . .").

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See Bethea*, 54 F.4th at 831; *see*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

However, with the passage of the First Step Act ("FSA") in 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582, *Malone*, 57 F.4th at 173, by enabling a federal inmate to file a motion for compassionate release directly with the court, as long as the inmate first exhausted administrative remedies.  *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).  In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request

by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually has two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step. Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the

Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647.  Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.  As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54.

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement").   "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners.  *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281.  The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added).  Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts."  As a result, district courts were "empowered . . . to consider any

extraordinary and compelling reason for release that a defendant might raise.'"  *Id.* at 284 (citation omitted).

However, effective November 1, 2023, U.S.S.G. § 1B1.13 was amended.  *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)).  The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).  Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A).  *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction").[6]  As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions.  18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the
defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term
of imprisonment (and may impose a term of supervised release with or without
conditions that does not exceed the unserved portion of the original term of
imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a),
to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least
30 years in prison pursuant to a sentence imposed under 18 U.S.C.
§ 3559(c) for the offense or offenses for which the defendant is
imprisoned;

---

[6] Defendant's Motion was filed on November 1, 2023, the effective date of the amendments.

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

The Policy Statement identifies six circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *Id.* § 1B1.13(b)(1)– (6). These include certain medical circumstances of the defendant, such as terminal illness, "serious cognitive impairment," the inability to receive specialized medical care while incarcerated, or the housing of the defendant at a correctional facility affected or at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", *id.* § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, *id.* § 1B1.13(b)(2); the defendant's family circumstances, *id.* § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, *id.* § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "Limitation on Changes in Law." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant

a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[7]

Section 1B1.13(d) of the Policy Statement, which concerns rehabilitation, limits the weight a court may assign to a defendant's rehabilitation while serving a sentence.  It provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13(d).  "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  *Id.*

Even if a defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.  *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court

---

[7] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act."  *Id.* at 500.  However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ."  *Id.* at 486.  "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements."  *Id.* at 495.  It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion).  Notably, the recent amendments to the Guidelines did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).  As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500).  The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021).  And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain.  *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said:  "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a §

3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam). In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid

unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . . " *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is illustrative. The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654, 655. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

## I. COVID-19

### A.

Health officials confirmed the first case of COVID-19 in the United States on January 31, 2020.[8] *United States v. Pair*, 84 F. 4th 577, 580 (4th Cir. 2023) (citation omitted).[9] Then, on

---

[8] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[9] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://perma.cc/24J3-UQZN.

March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020). Two days later, on March 13, 2020, President Trump declared a national emergency concerning the COVID-19 pandemic. *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)*, TRUMP WHITE HOUSE (Mar. 13, 2020), https://perma.cc/WF55-8M4P. That declaration was extended on several occasions. *See*, *e.g.*, 88 Fed. Reg. 9385 (Feb. 10, 2023).

The pandemic spawned "a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020), *aff'd in part, dismissed in part*, 2022 WL 1449180 (4th Cir. May 9, 2022) (per curiam). Indeed, for a significant period, the pandemic "produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 752–53 (E.D. Mich. 2020), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020). Schools and businesses were closed, or operated on a limited basis, in an effort to thwart the spread of the virus, which is extremely contagious. *Pair*, 84 F.4th at 589; *see Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (August 11, 2022), https://perma.cc/QGL2-3URS. As the Fourth Circuit has put it, in the early months of 2020, "a new reality set in. Nations around the world announced stringent limitations on in-person interaction . . . businesses ground to a halt; and death tolls mounted." *Pair*, 84 F.4th at 580.

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.* Nevertheless, the Court must reiterate that the COVID-19 pandemic has been

described as the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020), *abrogation on other grounds recognized by United States v. Phillibert*, 557 F. Supp. 3d 456 (S.D.N.Y. 2021) ("The COVID-19 pandemic . . . presents a clear and present danger to free society for reasons that need no elaboration.").

People infected with the coronavirus sometimes experience only mild or moderate symptoms.  But, particularly at the outset of the pandemic, the virus caused severe medical problems as well as death, especially for those in "high-risk categories . . . ."  *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted).  On May 11, 2022, the United States "reached more than 1 million COVID-19 deaths, according to a Reuters tally, crossing a once-unthinkable milestone about two years after the first cases upended everyday life."  Trevor Hunnicutt & Jeff Mason, *Biden Marks One Million U.S. COVID Deaths After Losing Political Battles*, Reuters (May 12, 2022), https://perma.cc/TLA5-YNFB.   And, as of March 10, 2023—the last day on which Johns Hopkins University updated its COVID-19 data—more than 103.8 million Americans had been infected with COVID-19.  *See COVID-19 Dashboard*, The Johns Hopkins Univ., https://perma.cc/J7XS-FYHT.

The Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that may increase the chance of severe illness due to the coronavirus, and has repeatedly revised its guidance concerning medical conditions that pose a greater risk of severe illness due to COVID-19.  The CDC most recently updated its guidance in May 2023 to reflect the most current data.  *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 11, 2023), https://perma.cc/923J-T5P8.

According to the CDC, the factors that increase the risk of severe illness include cancer; chronic kidney disease; chronic liver disease; chronic lung diseases, including COPD, asthma (moderate to severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension; dementia or other neurological conditions; diabetes (Type 1 and Type 2); disabilities such as Down syndrome; heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension; HIV; being immunocompromised; liver disease; having a BMI 25 or higher; physical inactivity; pregnancy; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; mental health conditions; substance use disorders; and tuberculosis. *People with Certain Medical Conditions*, *supra*, https://perma.cc/923J-T5P8.

The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See COVID-19 Risks and Information for Older Adults*, Ctrs. for Disease Control & Prevention (Feb. 22, 2023), https://perma.cc/VG23-TQMM. Furthermore, "[t]he risk of severe illness from COVID-19 increases as the number of underlying medical conditions increases in a person." *People with Certain Medical Conditions*, *supra*, https://perma.cc/923J-T5P8.

**B.**

As noted, the coronavirus is "highly contagious." *Pair*, 84 F.4th at 589. At the outset of the pandemic, some of the "measures we now know to be useful in combating the spread of the virus (such as masking, separation . . . and vaccinations) were either nascent or, as in the case of vaccines, unavailable." *Id.* Nevertheless, in an effort to prevent the spread of COVID-19, the CDC urged, *inter alia*, the practice of "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, Ctrs. for Disease Control & Prevention (Jan. 26, 2023), https://perma.cc/UJ98-2V6S; *see also Pair*, 84 F.4th at 585.

However, social distancing and "rigorous personal hygiene," which are "important combatants to the virus," are particularly difficult in the penal setting. *Seth*, 461 F. Supp. 3d at 248. Indeed, prisoners have little ability to protect themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners usually "share bathrooms, laundry and eating areas," and are often "bunked in the same cell" with several others. Amanda Klonsky, *An Epicenter of the Pandemic Will Be Jails and Prisons, if Inaction Continues*, N.Y. TIMES (Mar. 16, 2020), https://perma.cc/3RHL-WNKU. And, they are not free to follow their own rules.

To illustrate, prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate or distance themselves from others. *See* Kim Bellware, *Prisoners and Guards Agree About Federal Coronavirus Response: 'We Do Not Feel Safe,'* WASH. POST (Aug. 24, 2020), https://perma.cc/K6SW-LFGX (reporting use of non-reusable masks for months and a lack of transparency around policies for personal protective equipment and testing). They do not get to decide where, when, or how to eat or sleep. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to limit their spread. *See Coreas v. Bounds*, TDC-20-0780, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Eddie Burkhalter et al., *Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System*, N.Y. TIMES (Apr. 16, 2021), https://perma.cc/TR7Q-8H9J ("The cramped, often unsanitary settings of correctional institutions

have been ideal for incubating and transmitting the disease.  Social distancing is often not an option."); Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519–20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

On March 23, 2020, "in recognition of [the] stark reality" that COVID-19 posed substantial challenges to incarcerated individuals, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 461 F. Supp. 3d at 248.  Notably, the BOP implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), the BOP made "extensive and professional efforts to curtail the virus's spread."

Thereafter, on March 26, 2020, then Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19.  *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020).  And, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, then Attorney General Barr

issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9.  That memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

Two BOP officials, Andre Matevousian, then Acting Assistant Director of the Correctional Programs Division, and Hugh Hurwitz, then Assistant Director of the Reentry Services Division, issued a memorandum on May 8, 2020, to implement the Attorney General's directives on the increased use of home confinement.  The memorandum provided that the BOP should prioritize for review for home confinement eligibility those inmates who have either served a certain portion of their sentence or who only have a short amount of time remaining on their sentence.

## C.

There is no cure for the coronavirus.  But, medical therapies have continued to improve, and vaccines are now generally available.  *See Stay Up to Date with COVID-19 Vaccines*, CTRS. FOR DISEASE CONTROL & PREVENTION (Oct. 4, 2023), https://perma.cc/VZ77-KN7W.  Although the vaccines do not appear to prevent illness, they do seem to reduce the seriousness of an illness.

On January 4, 2021, at about the time the first vaccines became available, the BOP published "COVID-19 Vaccine Guidance."  *See COVID-19 Vaccine Guidance*, FEDERAL BUREAU OF PRISONS CLINICAL GUIDANCE (Jan. 4, 2021), https://perma.cc/P4KL-PEZW. It provided that administration of the COVID-19 vaccines (Pfizer and Moderna) would "align with [recommendations of] the Centers for Disease Control and Prevention."  *Id.* at 4.  Its plan was for prisoners at heightened risk to receive priority for the vaccine.  *Id.* at 6.  The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, *Federal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, FORBES (Dec. 21, 2020), https://perma.cc/2FF2-G6PX.

23

Much has changed since the coronavirus first emerged in early 2020. And, the virus, too, has changed repeatedly, with multiple strains and variants. As of May 11, 2023—the last day on which the CDC updated its vaccine tracker—approximately 69% of the total U.S. population had completed their primary vaccination series (i.e., one dose of a single-dose vaccine or two doses on different days), including 32% of people from ages 5 to 11, 61% of people from ages 12 to 17, 66% of people from ages 18 to 24, 72% of people from ages 25 to 49, 83% of people from ages 50 to 54, and 94% of people ages 65 and up. *See COVID-19 Vaccinations in the United States*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://perma.cc/B2KG-M4E3 (final update May 11, 2023); *Trends in Demographic Characteristics of People Receiving COVID-19 Vaccinations in the United States*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://perma.cc/6W5Q-55DR (final update May 11, 2023).

### D.

In an interview in September 2022 on the CBS television show "60 Minutes", President Biden declared that the pandemic was "over" in the United States. Alexander Tin, *Biden Says Covid-19 Pandemic is "Over" in U.S.*, CBS NEWS (Sept. 19, 2022). He stated: "The pandemic is over. We still have a problem with COVID. We're still doing a lotta work on it . . . . But the pandemic is over." *Id*. And, on April 10, 2023, President Biden signed into law House Joint Resolution 7, "which terminate[d] the national emergency related to the COVID-19 pandemic." Pub. L. No. 118-3, 137 Stat. 6 (2023).

Nevertheless, at the time of this writing, data suggests that COVID-19 remains prevalent. *See COVID Data Tracker*, CNTRS. FOR DISEASE CONTROL & PREVENTION, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last updated July 15, 2024). Available data may not provide a full picture of COVID-19's spread, because "[s]ince the end of

24

the public health emergency on May 11, 2023, data that has been crucial to understanding the spread and impact of Covid is reported by government sources less frequently, or is no longer reported at all." *Track Covid-19 in the U.S.*, N. Y. TIMES, https://www.nytimes.com/interactive/2023/us/covid-cases.html (last updated March 26, 2024). But, a new "summer covid wave" has emerged, leading "[c]oronavirus activity in wastewater [to] reach[] levels considered 'high' or 'very high' in 26 states."  Fenit Nirappil & Lizette Ortega, *Covid Summer Wave Spreads Across U.S., Even Infecting Biden*, WASH. POST (July 18, 2024), https://perma.cc/JC8B-29AR.

### III.     Motion For Compassionate Release (ECF 140, ECF 143)

#### A.

Cole has filed a Second Compassionate Release Motion.  ECF 140; ECF 143.  He also submitted a letter titled "Inmate Request to Staff Response," dated June 21, 2023, in which the Warden at FCI Allenwood denied Cole's request of June 3, 2023, for compassionate release.  ECF 140-1.  The government does not dispute that Cole has satisfied the requirement of administrative exhaustion.  *See* ECF 160.

In his Second Motion, Cole asserts that he has various medical conditions that warrant a reduction in his sentence.  ECF 140 at 1.  He explains, *id.* at 1, 2: "I'm 35 years old now and still high risk and vulnerable to Covid, monkey pox and other diseases spreading around the prison, especially having asthma, hypertension, sickle cell trait, obesity issues, PTSD and a minor heart issue," as well as dental issues.[10]

---

[10] The PSR reflects that defendant suffered a gunshot wound on October 4, 2023.  ECF 30, ¶ 62.  His son was shot in 2008.  *Id.* ¶ 63.  And, defendant claimed to suffer from PTSD.  *Id.*

Cole also maintains that he is entitled to relief under § 3582(c)(1)(A) because of family circumstances, including the need to serve as a caregiver for his seven-year-old daughter and teenage son. ECF 161 at 4. Specifically, he explains that he is the only caregiver for his daughter due to the incarceration of the child's mother, Cole's fiancée. *Id.*; *see also* ECF 140 at 2. In his submission on February 12, 2024 (ECF 161), Cole noted that his son was about to graduate from high school. *Id.* at 4. He asserts that although his son "has family []with him," he still "need[s] his father . . . ." *Id.* Cole expressed the desire to be home to "support [his son] every step of the way," including to "[g]uide him to go to college . . . ." *Id.*

In addition, Cole contends that he is entitled to relief under 18 U.S.C. § 3582(c)(1)(A) based on the Fourth Circuit's opinion in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022). *See* ECF 143. In *Campbell*, the Fourth Circuit considered whether the "commission of an attempt crime constitutes a 'controlled substance offense' supporting a career offender sentencing enhancement." *Campbell*, 22 F.4th at 440. The Court concluded that it did not. *Id.* at 448. Cole argues that in light of *Campbell*, "if [he] was sentence[d] today . . . [he] would be home today." ECF 143 at 2.

Further, Cole argues that the amendments to the United States Sentencing Guidelines—namely, the amendments to Part A of Amendment 821, effective November 1, 2023—also warrant a reduction in his sentence. *Id.* He maintains that he is entitled to relief under 18 U.S.C. § 3582(c)(2), because he was "sentenced on the basis of a guideline that has subsequently been lowered and made retroactive by the Sentencing Commission." *Id.*

Moreover, Cole contends that he is "not a flight risk nor a danger to [his] community." ECF 140 at 1. In addition, Cole outlines options for his employment upon release, including a possible position at BWI airport or a position with his brother's trucking employer. *Id.* He also

claims that he has secured the support of the Center for Urban Families, which will help him access opportunities and "put [him] in a position to succeed." *Id.* at 2.

In the government's Opposition (ECF 160), the government maintains that Cole's "arguments are meritless." *Id.* at 2. Specifically, the government contends that *Campbell* does not apply, as "there was no attempt crime at issue here." *Id.* The government asserts, *id.* (emphasis in ECF 160): "Indeed, it is Defendant's two past convictions for *Possession With Intent to Distribute CDS* that render him a Career Offender, PSR (ECF No. 30) at 10, not any attempt crime or any other type of inchoate crime." Thus, the government maintains that defendant would still qualify as a career offender if he were sentenced today. *Id.*[11]

In addition, the government asserts that Amendment 821 does not provide a basis for relief. *Id.* It states, *id.*: "Because Defendant is a Career Offender, he is a Criminal History Category VI, PSR (ECF No. 30) at 10, and the provisions of U.S.S.G. § 4A1.1(e) simply do not factor into his final sentencing guidelines calculation ECF 160." The government also contends that 18 U.S.C. § 3582(c)(2) does not apply, as Cole "has not been 'sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o).'" *Id.* at 3 (quoting 18 U.S.C. § 3582(c)(2)).[12]

Notably, the government does not contest defendant's description of his medical conditions. However, the government argues that Cole's health conditions do not constitute an "extraordinary and compelling" reason for relief, as he has received the Moderna vaccine, which

---

[11] The Presentence Report (ECF 30) reflects two prior felony drug convictions for possession with intent to distribute, not *attempted* possession with intent to distribute. *See id.* ¶¶ 35, 37. Therefore, I agree that *Campbell* appears inapplicable.

[12] The government incorporates the arguments contained in its opposition (ECF 110) to Cole's Motion for Reconsideration (ECF 103). *See* ECF 160 at 3.

lowers his risk of severe illness following a COVID-19 infection.  ECF 110 at 7, 8, 9.  And, the government argues that the § 3553(a) factors weigh against release.  *Id.* at 9, 10.  In the government's view, the circumstances have not changed since the Court denied Cole's First Motion.  *Id.* at 10.  And, it contends that granting Cole relief "would fail to promote respect for the law, provide just punishment, and afford adequate deterrence."  *Id.*

In his Reply (ECF 161), Cole maintains that he satisfies the § 3553(a) factors, as he has taken drug education courses, has "been infraction free since January of 2020," and has "done a 360 [degree] turn for the best."  *Id.* at 4.  As to recidivism, Cole argues that his "probability [of] coming back to prison after [his] experience" is very low.  *Id.* at 5.

### B.

Neither Cole nor the government has provided Cole's recent medical records with their submissions.  *See* ECF 140, ECF 143, ECF 160, ECF 161.  Accordingly, the only medical records available to the Court are the medical records previously filed by the FPD on June 12, 2020, in support of Cole's First Motion (*see* ECF 66-2), as well as Cole's COVID-19 vaccination records, filed by the government in support of its opposition to Cole's Motion for Reconsideration.  *See* ECF 112-2.

The medical records previously produced to the Court indicated that Cole has asthma (ECF 66-2 at 3–9), obesity (*id.* at 21–25), a sickle cell trait (*id.* at 27), and major depressive disorder (*id.* at 29–37).  In Cole's First Motion, he explained, ECF 66 at 7 n.2: "Though his BOP medical records note that 'hypertension' is 'denied,' these notations are often accompanied by blood pressure readings that reflect high blood pressure. Ex. B, 9. Mr. Cole also has a family history of hypertension. Medical Records, 48 (noting his mother's hypertension)."

28

Since the Court's ruling as to the First Motion, Cole has been vaccinated once for COVID-19. Specifically, he received the Moderna vaccine on August 25, 2021. *See* ECF 112-1 at 2.

The government argues that because Cole has been vaccinated for COVID-19, he is no longer at risk of severe disease from COVID-19. ECF 110 at 7, 8, 9. As indicated, the records provided to the Court reflect that defendant was vaccinated once, on August 25, 2021. ECF 112-2 at 2. However, "[t]he virus that causes COVID-19 is always changing, and protection from . . . COVID-19 vaccination declines over time." *See COVID-19 Vaccine Effectiveness*, CTRS. FOR DISEASE CONTROL & PREVENTION (Feb. 1, 2024), https://perma.cc/4BPJ-4XKZ. As new strains and variants of COVID-19 emerge, updated versions of vaccines have been developed. But, there is no indication that defendant ever received any of them.

In any event, vaccination against COVID-19 "does not negate that [defendant's] underlying health conditions make him eligible for compassionate release." *United States v. Spriggs*, CCB-10-0364, 2021 WL 1856667, at *3 (D. Md. May 10, 2021). As Judge Grimm said in *United States v. Palmer*, PWG-13-623, 2021 WL 3212586, at *3 (D. Md. July 29, 2021): "It is impossible to predict the impact of the vaccines on future strains of the virus, just as it is impossible to predict the impact of COVID-19 on [defendant's] specific medical issues." Moreover, the vaccine does not provide permanent immunity.

Indeed, the future trajectory of the COVID-19 pandemic is anything but predictable. In particular, the Court is mindful that the CDC has confirmed that breakthrough infections of COVID-19 among vaccinated individuals occur and can prove serious. *See Rates of COVID-19 Cases and Death by Vaccination Status*, CTRS. FOR DISEASE CONTROL & PREVENTION, July 29, 2024, https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last accessed July 30, 2024). An earlier analysis of "nationwide data from the Center for Disease Control and

Prevention" revealed that "[t]he vaccinated made up 42 percent of fatalities in January and February [of 2022,] during the highly contagious omicron variant's surge, compared with 23 percent of the dead in September, the peak of the delta wave."  Fenit Nirappil & Dan Keating, *Covid Deaths No Longer Overwhelmingly Among the Unvaccinated as Toll on Elderly Grows*, WASH. POST (Apr. 29, 2022), https://perma.cc/YU8Q-2C7U.

Further, the CDC has explained: "Since the start of the COVID-19 pandemic, infections with SARS-CoV-2, the virus that causes COVID-19, have peaked during the winter and also surged at other times of the year. These periodic surges are due in part to the emergence of new variants and decreasing immunity from previous infections and vaccinations."  *See COVID-19 Can Surge Throughout the Year*, CTRS. FOR DISEASE CONTROL & PREVENTION, July 3, 2024 https://perma.cc/KA4Z-UNTD (last accessed July 25, 2024).  Therefore, the fact of vaccination for an earlier strain, or even a prior COVID-19 infection, does not eliminate concerns about underlying health conditions that might otherwise render an individual eligible for compassionate release.

Judges of this Court have concluded that an inmate is eligible for compassionate release, notwithstanding his vaccination status.  *See e.g.*, *United States v. Hegie*, RDB-14-411, 2022 WL 605383, at *2 (D. Md. Mar. 1, 2022) (finding that, in light of the COVID-19 pandemic, a fully vaccinated defendant who suffered from obesity and asthma presented an extraordinary and compelling reason for his release); *United States v. Coleman*, PWG-17-393, WL 356724, at *3 (D. Md. Feb. 7, 2022) (determining that, in light of the dynamic nature of the COVID-19 pandemic and the absence of any information concerning the inmate's vaccination status, defendant's underlying medical conditions qualified as an extraordinary and compelling reason for his release); *United States v. Rivas*, TDC-19-0417, 2022 WL 36941, at *2 (D. Md. Jan. 4, 2022) (explaining

that vaccinated defendant who was a paraplegic and suffered from frequent urinary tract infections could satisfy the extraordinary and compelling prong of the analysis). "At the end of the day, district judges are not epidemiologists." *United States v. Sherrod*, 19-20139, 2021 WL 3473236, at *5 (E.D. Mich. Aug. 6, 2021). In light of the evolving circumstances regarding COVID-19, coupled with defendant's medical issues, Cole's vaccination status does not render him ineligible for compassionate release. *See Palmer*, 2021 WL 3212586, at *3 (noting that it is not possible "to predict the impact of the vaccines on future strains of the virus . . . .").

Cole suffers from multiple health conditions, including obesity, asthma, and hypertension. ECF 140 at 1, 2. Numerous judges have found extraordinary and compelling circumstances for defendants with multiple chronic medical conditions, such as those applicable to Cole. *See, e.g.*, *United States v. Azianbidji*, PWG-17-253, 2021 WL 307416, at *1 (D. Md. Jan. 29, 2021) (defendant with hyperlipidemia, hypertension, and obesity); *United States v. White*, CCB-09-369, 2020 WL 3960830, at **2–3 (D. Md. July 10, 2020) (defendant with neutropenia, hyperlipidemia, hypertension, heart disease, chronic kidney disease, and obesity); *United States v. Hilow*, 15-cr-170-JD, 2020 WL 2851086, at *4 (D.N.H. June 2, 2020) (involving asthma, migraines, hypertension, high cholesterol, prediabetes, and borderline obesity); *United States v. Quintero*, 458 F. Supp. 3d 130, 132 (W.D.N.Y. 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension constituted an extraordinary and compelling reason); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (concluding that defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason). There are also some cases in which courts have found extraordinary and compelling circumstances when hypertension is the sole condition. *See, e.g.*, *United States v. Salvagno*, 456 F. Supp. 3d 420, 423, 427–29 (N.D.N.Y. 2020); *United States v. Sawicz*, 453 F. Supp. 3d 601, 604-05 (E.D.N.Y. 2020).

Therefore, I conclude, again, that Cole's medical conditions constitute an extraordinary and compelling reason for compassionate release under § 3582.

## C.

Cole also seeks compassionate release so that he can serve as a caretaker to his children. *See, e.g.*, ECF 103 at 1, 7, 8; ECF 122 at 1, 3, 8; ECF 161 at 4.  He explained in prior letters that his fiancée was incarcerated and thus not able to care for their then seven-year-old daughter.  ECF 122 at 1.

The PSR (ECF 30) reflects that, as of sentencing in 2019, defendant's son was twelve years of age, and the child lived with his mother.  *Id.* ¶ 56.  The defendant's son is now 18 years of age, according to the defendant.  ECF 161 at 4.  The son is not a minor, nor does he appear to have any disabilities or special needs.

The defendant's daughter was two at the time of sentencing, and the child's mother was in custody at that time.  *Id.* ¶ 57.  As a result, the child was "being raised" by the child's maternal grandmother and great grandmother.  *Id.*

Cole's fiancée has written to the Court in support of Cole's motion for compassionate release.  ECF 155 (letter of 1/2/24).  Notably, she is no longer incarcerated; she was released from incarceration in the fall of 2023.  *Id.* at 1.  Nevertheless, she states that she needs Cole home to help her raise their seven-year-old daughter.  *Id.* at 2.  She explains that caring for the child is "harder than before" she was incarcerated, and she needs Cole to return home because of her "mental health," and because she lacks "family support."  *Id.*  Further, she notes that she is "not working [and] trying to finish school," and she would benefit from Cole's assistance.  *Id.*

U.S.S.G. § 1B1.13(b)(3) concerns a defendant's "Family circumstances." Under § 1B1.13(b)(3)(A), "[t]he death or incapacitation of the caregiver of the defendant's minor child . . ." may constitute a compelling reason for the defendant's release. But, in the absence of evidence that an inmate is the sole available caregiver for his child, district courts typically find that the inmate's family circumstances do not amount to an extraordinary and compelling reason within the meaning of 18 U.S.C. § 3582(c)(1)(A). *See*, *e.g.*, *United States v. Rivera*, CR 15-2990 RB, 2021 WL 6062828, at *2-3 (D.N.M. Dec. 22, 2021); *United States v. Best*, 5:19-CR-293-D-2, 2021 WL 5985568, at *4 (E.D.N.C. Dec. 16, 2021); *United States v. Jimmerson*, Crim. No. 17-13-JWD-RLB, 2021 WL 4342330, at *3 (M.D. La. Sept. 23, 2021); *United States v. Thomas*, 3:17-CR-0154-B-9, 2020 WL 6737872, at *2–3 (N.D. Tex. Nov. 16, 2020).

Section 1B1.13(b)(3) has been modified by Amendment 814, effective November 2023. As the United States Sentencing Commission explains:

> First, this modification expands the existing provision relating to the death or incapacitation of the caregiver of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. Second, the modification adds a new provision for cases in which a defendant's parent is incapacitated. Finally, the modification adds a second new provision that applies when similar circumstances exist with respect to a person whose relationship with the defendant is similar in kind to that of an immediate family member.

United States Sentencing Commission, *2023 Amendments in Brief*, at 2, https://perma.cc/6MGU-7SZQ.

Notably, "incapacitation" is a high bar. The defendant must show either that the "caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement § 5050.50(5). Moreover, this provision states that the inmate must show that "the deceased/incapacitated family

member was and still is the only family member caregiver capable of caring for the inmate's minor child." *Id.*

Prior to the amendments that went into effect in November of 2023, district courts throughout the country denied motions for compassionate release in similar circumstances. *See*, *e.g.*, *United States v. Washington*, 2:18-CR-46-RMP-1, 2022 WL 1182696, at *3–4 (E.D. Wash. Apr. 20, 2022) (denying motion for compassionate release where defendant's mother, who had been the "main source of childcare assistance" died, in light of the fact that the mother of the children was not incapacitated); *United States v. Broome*, 3:19-cr-384-MOC, 2022 WL 893110, at *4 (W.D.N.C. Mar. 25, 2022) (explaining that although the medical condition of defendant's wife has "made it difficult to care for their children during the COVID-19 pandemic, [defendant] does not assert that she has become incapacitated such that she is unable to care for the children"); *United States v. Dogan*, 2:16-cr-00198-JAM-1, 2020 WL 4208532, at *3 (E.D. Cal. Jul. 22, 2020) ("The Court recognizes that caring for children fulltime, in the midst of a public health crisis, is increasingly challenging.  But it is neither unusual nor insurmountable.").

*United States v. Farlow*, Crim. No. 18-044 (SRC), 2021 WL 1207485 (D.N.J. Mar. 30, 2021), is informative.  There, the defendant requested compassionate release on the ground that "the mother of his children is an essential worker, and thus . . . she is having great difficulty caring for their minor children during the covid-19 [sic] pandemic while [defendant] is incarcerated." *Id.* at *3.  The district court denied the request, explaining, *id.*:

> [Defendant] has not alleged that the mother of his children has passed away or is incapacitated; rather, he has merely claimed that her position as an essential worker makes it difficult for her to care for their children without his assistance.  While the Court understands the hardship that this may present for [defendant's] family, this is not the same as a caregiver being incapacitated, and thus is not a basis for compassionate release under the statute.

In my view, defendant's family circumstances do not qualify as an extraordinary and compelling reason for his release.

**D.**

As mentioned, I have concluded that defendant's various health conditions constitute an extraordinary and compelling reason for a sentence reduction. Therefore, I must consider whether compassionate release would be consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a).

The case is a serious one. Drugs and firearms are a dangerous combination. Moreover, the offense occurred in the vicinity of an elementary school. And Cole, who was 31 years of age at sentencing, was prohibited from possessing a firearm. It is also troubling that at or about the time of the offense, defendant's social media posts showed photos of his handguns and referenced his gang membership. Defendant also has a long history of substance abuse. He began using oxycodone as a teenager. ECF 30, ¶ 64.

More recently, the unusual volume of defendant's filings with the Court is noteworthy. The frequency of Cole's filings raises questions about defendant's judgment and his capacity for self-restraint.

Defendant's criminal history is also pertinent. At the time of the offenses in issue, defendant already had two Maryland felony drug convictions. *See* ECF 30, ¶¶ 35, 37. For the first one, which occurred in August of 2009, defendant was 22 years old at the time. *Id.* ¶ 35. He received a ten-year sentence on August 10, 2010, with all but two years suspended. And, because there is parole in the Maryland system, he did not actually serve two years. However, defendant violated his probation and, on May 22, 2014, the Court sentenced Cole to five years of imprisonment.

On the same date (5/22/14), defendant was sentenced for a second felony drug offense, which occurred on May 9, 2013. *Id.* ¶ 37. He received a sentence of five years, concurrent with the sentence for violation of probation. *Id.* He was released on June 22, 2015. *Id.* Thus, he served significantly less than five years of imprisonment. Defendant did not take advantage of the lenient dispositions he received.

Where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n. 3. Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The court must "at least weigh the [defendant's] conduct in the years since the initial sentencing." *McDonald*, 986 F.3d at 412; *see United States v. Martin,* 916 F.3d 389, 397 (4th Cir. 2019) (requiring an "individualized explanation" as to rehabilitative efforts). A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when

the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct).

A defendant's efforts at rehabilitation are "a significant factor" in determining whether a sentence reduction is warranted.  *United States v. Ogun*, 657 F. Supp. 3d 798, 811 (E.D. Va. Feb. 24, 2023).  However, the Court is mindful that rehabilitation alone does not warrant a defendant's immediate release.  *Davis*, 2022 WL 127900, at *1.

In Cole's numerous submissions, he has spoken of his efforts for self-improvement, his self-reflection, and his acceptance of responsibility.  For example, on June 9, 2022, defendant again discussed the need to care for his daughter, as well as his medical conditions, including PTSD and "long term COVID symptoms."  ECF 122 at 1, 3, 8.  But, of import, Cole also asserted, *id.* at 7: "I've been infraction free since [D]ecember of 2019, from 2020 til this day I've corrected myself, evaluated things, and been out of trouble, I've programed the best I can threw [sic] this pandemic and I've sent off my education transcript showing my progress of what I've accomplish[ed] thus far.  The drug education you've requested has been done as well . . . ."  *See also, e.g.*, ECF 114 at 2 ("Everyday and every night I think about the last word [sic] you said to me 'LEARN A LESSON', til this day I can honestly say that yes your honor I've learned quite a few lesson's [sic].  I have honestly say I've learned that I was truly a fool . . . ."); *id.* at 4 ("My addiction for opioid's [sic], oxycontin, weed have me where I'm at today, I accept my faults and held [sic] myself accountable for my action [sic], my roles I played."); ECF 119 at 1 ("The mistakes I made to be here is seen and my improvement of a better life has resurface[d]."); ECF 122 at 6 ("I keep those words of yours in my head 'TO LEARN A LESSON' your honor if you ask me that today I would tell you [I have]."); *id.* at 7 ("I've found new respect for the law and

life."); ECF 132 at 4 ("I know I've made a big mistake five years ago, I've took responsibility for my actions, I've transform[ed] into a better man for myself and others."); *id.* at 5 ("[P]lease your honor, please can I get the chance to prove I've learned my lesson, the lesson you wanted me to learn I've learned . . . ."); ECF 140 at 1 ("I understand where I went wrong and where I wanna go now and that's home to be the man I'm suppose to be[] in the first place."); ECF 143 at 3 ("Judge Hollander once told me that she wanted me to learn a lesson if I was ask[ed] that today at the age of 36 I could honestly look at her in the eyes and say YES!!"); ECF 146 at 2 ("Defendant has changed and is no longer a threat to the community and should be given a chance . . . ."); ECF 151 at 1 ("If I was ask[ed] by you today have I learn[ed] my lesson, I could actually stand in front of you your honor and say yes I have."); *id.* ("I no longer blame the court system, the lawyers, the prosecueter [sic], the peers I was once around. I only blame myself, I blame my actions that lead [sic] me here, I blame my mental thinking at that time it's my fault your honor."); *id.* ("After 7 long years I truly can say 'YES I'VE LEARNED MY LESSON.'"); ECF 151-1 (list of promises defendant has made including that he has "learned [his] lesson," is "a changed man," and seeks to "give [his] all and more" and "to succeed in life"); ECF 154 at 2 ("I take pride in my change and growth."); ECF 159 at 1 ("I know that deterrence and rehabilitation are among the key objectives of sentence reduction and with all that I've been threw [sic] I just really need this chance."); *id.* at 3 ("Everyday [sic] I display the best I can a way to demonstrate intellectual achievement, demonstrate empathy and concern for others."); ECF 170 at 1 ("Please put this [certificate] in my file . . . for proof of me working hard to better myself and helping others to succeed in the process and also know that I'm truly ready to be back in society.").

It is also significant that defendant has taken several education classes while incarcerated. Significantly, all but one were taken following the Court's Memorandum (ECF 96) and Order

(ECF 97) of August 7, 2020, denying Cole's First Motion (ECF 61, ECF 66).  *See* ECF 120 at 2;

ECF 132-2; ECF 140-2 at 1; ECF 151-3; ECF 152 at 2–3; ECF 168-1 at 7–8.  These courses pertain

to subjects such as workplace skills, resume writing, geometry, animal anatomy, emotional

intelligence, and career exploration.  ECF 168-1 at 8.  Cole has described his involvement in these

courses as follows, ECF 132-2 at 1:

> Just wanted to show you that I'm working hard, staying focus[ed], learning
> new things and really working on being a better me, a better person in society I've
> completed drug education and done all I can threw [sic] these times because it's
> hard to do anything while we're on modified lockdowns for COVID or just because
> that's how the prison warden want it ran . . . .

Further, Cole asserts that he recently completed the Non-Residential Drug Abuse

Treatment Program ("NRDAP").  ECF 170-1 (NRDAP Certificate dated June 25, 2024); *see also*

ECF 167 at 1; ECF 167-1; ECF 168-1.  He states, ECF 167 at 1: "I've found out my problems,

face[d] them, set goals for myself to change my criminal errorthinking [sic], had real interventions

and so much more."  Further, Cole explains that his case manager has recommended him for

placement in a halfway house.  ECF 152 at 1; *see also* ECF 167 at 1.  He notes, ECF 152 at 1:

"I've been doing great and I have [a] full-time and part time job lined up for me upon release, even

going to the half way house those jobs are waiting for me along with the proper support from the

C.F.U.F. (Center for urban families reentry program) and my family."

Also of relevance, in his Second Motion Cole states that he has not had any disciplinary

infractions in the last twelve months.  ECF 140 at 2.  In one of his more recent filings, Cole attached

a BOP "Individualized Needs Plan – Program Review," dated June 6, 2024.  ECF 168-1 at 7.  This

document's Discipline History would contain infractions incurred in the last six months.  It states,

*id.* at 2: "NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS."  Moreover, the government

does not allege a recent history of infractions.

In addition, I am mindful that defendant's incarceration in the midst of a global pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5, 456 F. Supp. 3d 557 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary").

### E.

The First Step Act "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'" *United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020). Accordingly, the Court's decision need not be confined either to immediate release or leaving the existing sentence intact. The statutory text of the First Step Act allows courts to "reduce the term of imprisonment" upon a finding of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A).

Numerous district courts in this Circuit and elsewhere have granted sentence reductions without immediate release. *See, e.g.*, *United States v. Johnson*, RDB-07-0153, 2020 WL 6063733, at *5 (D. Md. Oct. 14, 2020) (reducing sentence from 360 months to 300 months); *Braxton*, 2020 WL 4748536, at *5 (reducing sentence from 246 months to 168 months); *United States v. Marks*, 455 F. Supp. 3d 17, 37–38 (W.D.N.Y. 2020) (reducing sentence from 40 years to 20 years); *United States v. Arey*, Crim. No. 5:05-00029, 461 F. Supp. 3d 343, 2020 WL 2464796 (W.D. Va. May 13, 2020) (reducing sentence but denying immediate release); *United States v. Day*, 474 F. Supp. 3d 790 (E.D. Va. 2020) (same); *see also United States v. Zullo*, 976 F.3d 228, 327 (2d Cir. 2020)

("It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence . . . .").

Defendant has now served a sentence far longer than any earlier sentence he ever received. *See* ECF 30, ¶¶ 33–37.  For a possession of CDS offense that occurred in 2009, when defendant was twenty-one years of age, he received a sentence of one year, with all but one day suspended. *Id.* ¶ 34.  For a violation of probation in that case, he received a sentence of seven months and 19 days.  *Id.*  And, as discussed, in 2010 defendant received a ten-year sentence for a felony drug offense, of which eight years was suspended.  *Id.* ¶ 35.  He violated his probation in 2014 and received a five-year sentence.  *Id.*  Then, in 2014, defendant was convicted of another felony drug offense.  *Id.* ¶ 37.  This offense appears to be the basis for the violation of probation referenced in ECF 30, ¶ 35.  Cole received a five-year sentence, concurrent with the sentence imposed for the violation of probation referenced in ECF 30, ¶ 35.  Defendant was paroled in June 2015, so he served only a small portion of the sentence.

As I see it, the period of incarceration that Cole has served to date is not sufficient to warrant his immediate release.  Again, this was a serious and potentially dangerous case, involving the sale of narcotics and possession of a firearm in close proximity to an elementary school.  On the other hand, defendant appears to have made significant strides towards rehabilitation.  In my view, a reduction of sentence is warranted in light of defendant's efforts to rehabilitate himself, reflected in his recent lack of prison infractions, his completion of numerous educational courses, and his remorse.

I conclude that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Cole's sentence by one year, from 108 months of imprisonment to 96 months of imprisonment, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

## IV.    Motion for Home Confinement (ECF 158)

Defendant filed a "Motion for Converting Over to Home Confinement."  ECF 158.  He argues that he has had "no incident reports in four years, he has completed First Step Act, Ace classes, drug education, and more, [and] he's working and educating hi[m]self and others."  *Id.* at 1.  Cole asserts, *id.*: "Mr. Cole is at the 18 month range of coming home being on home confin[e]ment gives him access to his two children."

Defendant submitted a document entitled "MY PLAN'S."  ECF 158-1.  There, Cole lists his plans upon release, which include, for example, *id.* at 1, 2, "to stay out of prison for good"; to "have two jobs" as soon as he is out of prison; to attend college to pursue business and communication degrees; to save money to eventually start multiple businesses, including a cleaning service, a juice bar, and a food truck; to go to church frequently; to educate children as a social activist; and to coach little league baseball games again with the James Mosher League.

Defendant does not point to any legal authority indicating that the Court has the authority to place him in home confinement.  Any request for the conversion of a sentence of imprisonment to a sentence of home confinement must be submitted to the BOP.  Section 3624(c) of Title 18 of the United States Code authorizes the transfer of an inmate from prison to home confinement. That section specifically provides: "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of ten percent of the term of imprisonment of that prisoner or six months."  18 U.S.C. § 3624(c)(2).  However, this authority resides with the BOP, and not with the courts.  *See United States v. Gray*, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at

*3 (E.D.N.C. Apr. 22, 2020) ("The BOP has exclusive authority to determine defendant's place of imprisonment, including home confinement, and the BOP's placement decisions are 'not reviewable by any court.'") (citing 18 U.S.C. § 3621(b)); *United States v. Johnson*, Crim. No. JKB-14-0356, 2020 WL 1929459, at *2 (Apr. 21, 2020) ("It is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement, pursuant to 18 U.S.C. § 3624(c).").

Therefore, this Court does not have the authority to place the defendant in home confinement. Accordingly, I shall deny defendant's Motion for Converting Over to Home Confinement.

## V.    Motion for Reconsideration (ECF 103)

As noted, on May 18, 2020, defendant filed his First Motion for compassionate release. ECF 61; *see also* ECF 66. By Memorandum (ECF 96) and Order (ECF 97) of August 7, 2020, I denied the motion. Specifically, I found that, "given Cole's obesity, coupled with his other medical conditions, he satisfies the 'extraordinary and compelling' prong of the § 3582 analysis." ECF 96 at 12. Upon consideration of the factors under 18 U.S.C. § 3553, I denied the First Motion. *Id.* at 15.

About seven months later, on March 10, 2021, the Court received defendant's "Motion for Reconsideration to Reduce Sentence Pursuant to 18 U.S.C. 3582(c)(7)(A)(i)." ECF 103. There, Cole requested "an order reducing his sentence to time served based on his medical conditions, COVID-19, the need for treatment that[']s unavailable at this time in the BOP due to COVID-19, and on the basis that defendant is the only available care giver [sic] to his daughter whom is currently cared for by her very sick grandmother." *Id.* at 1; *see also id.* at 7–8.

The government filed a "Response in Opposition to Defendant's Successive Motion for Reduction in Sentence." ECF 110. It asserted, *id.* at 1: "Although styled as a Motion for

Reconsideration, the Motion is in effect nothing more than a successive motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)."   According to the government, the administrative exhaustion requirement "applies with equal force to any successive motion for release" (*id.* at 6), and defendant "failed to establish that he filed a new § 3582 request with FCI Allenwood between August 7, 2020, when the Court denied [his] first motion, and March 10, 2021, when Defendant filed his successive motion."   *Id.* at 7.   Moreover, the government argued that there are no "extraordinary and compelling reasons" for compassionate release, because defendant has since been vaccinated against COVID-19 and therefore his obesity "no longer places him at a heightened risk of severe illness from COVID-19."   *Id.* at 8, 9.

By letter docketed on October 21, 2021, defendant replied.   ECF 117.   He explained that he exhausted his remedies "several times."   *Id.* at 1.   Indeed, on January 28, 2022, Cole filed the FCI Allenwood Warden's denial of his motion for compassionate release, dated January 7, 2022. ECF 119-1.

I agree with the government that, although styled as a motion for reconsideration, ECF 103 constitutes a successive motion for compassionate release.   And, I agree with the government that defendant did not adequately exhaust his remedies prior to filing ECF 103.   Indeed, the only proof of exhaustion defendant provides for his motion of March 10, 2021, is a letter of January 7, 2022, from the Warden, denying his request for compassionate release.

In any event, Cole subsequently filed the Second Motion, which I considered on the merits. Given my disposition as to the Second Motion (ECF 140, ECF 143), the motion at ECF 103 is moot, because it has been superseded by the Second Motion.

### VI.    Conclusion

For the foregoing reasons, I shall deny defendant's Motion for Reconsideration (ECF 103) and defendant's Motion for Home Confinement (ECF 158).  However, I shall grant defendant's Second Compassionate Release Motion (ECF 140, ECF 143), in part.  Specifically, I shall reduce defendant's sentence from 108 months to 96 months of imprisonment.

An Order follows, consistent with this Memorandum Opinion.  And, an Amended Judgment shall issue.

Date:  August 7, 2024                                                _____/s/_____

                                                                                    Ellen Lipton Hollander
                                                                                    United States District Judge